SEAN K. KENNEDY (Bar No. 145632)
Federal Public Defender
(E-mail: Sean_Kennedy@fd.org)
Jeffrey A. Aaron (Bar No. 135625)
Deputy Federal Public Defender
(E-Mail: jeffrey_aaron@fd.org)
ANGELA C. C. VIRAMONTES (Cal. Bar. No. 228228)
Deputy Federal Public Defender
(E-mail: Angela_Viramontes@fd.org)
MATTHEW B. LARSEN (Cal. Bar. No. 287665)
Deputy Federal Public Defender
(E-mail: Matthew_Larsen@fd.org)
3801 University Avenue, Suite 700
Riverside, California 92501
Telephone (951) 276-6346
Facsimile (951) 276-6368

Attorneys for Defendant
SOHIEL OMAR KABIR

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>SOHIEL OMAR KABIR,<br><br>　　　　Defendant. | Case No. ED CR 12-92-VAP<br><br>**NOTICE OF MOTION AND MOTION TO SUPPRESS EVIDENCE OBTAINED THROUGH THE FOREIGN INTELLIGENCE SURVEILLANCE ACT ("FISA") AND TO DISCOVER FISA APPLICATIONS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**DATE:** May 5, 2014<br>**TIME:** 9:00 a.m. |

PLEASE TAKE NOTICE THAT on the above date and at the above time, or as soon as counsel may be heard, the defendant, by and through his counsel, will move to suppress the FISA information in his case and simultaneously move for disclosure of

///

such information as is necessary for him to determine the legality of the search.

     This motion will be based on the files and records in this action, the accompanying memorandum of points and authorities, whatever other the arguments and authorities may be produced at the hearing of this motion.

                                            Respectfully submitted,

Dated: February 24, 2014        By: */s/ Jeffrey A. Aaron*
                                             JEFFREY A. AARON
                                             Deputy Federal Public Defender

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. STATEMENT OF FACTS

On November 19 and December 17, 2012, the government filed notice that it intended to offer into evidence or otherwise use or disclose at pre-trial hearings and at trial, evidence obtained or derived from surveillance and searches conducted pursuant to FISA. *See* Notice of Intent to Invoke the Classified Information Procedures Act ("CIPA") (filed 12/17/12) and FISA Notice (filed 11/19/12) (under seal). There were many searches of Mr. Kabir's property in this case, including his electronic storage devices, and his communications via electronic media with the other co-defendants, as well as many searches of the co-defendants' property. It has been somewhat difficult for the defense to determine exactly what the FISA evidence is, and the defense has several times requested clarification from the government. On January 21, 2014, for example, the defense wrote:

> 2. If I understood Susan correctly, there is FISA and FISA amendments material and it is labelled "Property of the United States Government" -- please let me know if my understanding is not correct. I have gone through all the discovery to date and have found the pages of discovery so labelled. They include:
> Bates 1107 and 1108 (two CDs marked "Property of the United States Government") (Produced in the Discovery letter of 12-17-12 but only notes as "Property of" in Discovery letter 1-18-13)
> Bates 2087-2093 (seven CDs marked "Property of the United States Government") (Discovery letter 1-18-13)
> Unnumbered with Bates (Discovery letter 5-7-13 lists this surveillance audio/video of 12350 Marshall Avenue, Apartment 124, Chino, CA 91710 as "Property of the United States Government")
> Bates 6274-6353 (I saw that these pages were labelled but Discovery letter 6-5-13 does not list them as being marked "Property of the United States Government")
> Bates 8551-8733 (Discovery letter 8-9-13)
> Bates 8922-8925 (Discovery letter 8-30-13)
> Bates 15397-22279 (Discovery letter 9-11-13)
> Bates 22280-28387 (Discovery letter 10-4-13)
> Bates 28389--34161 (Discovery letter 11-13-13)

1

>   Can you please confirm that this is all the material you've produced that was obtained pursuant to FISA, including the amendments thereto? Thanks.

Email from DFPD Aaron to AUSA Chiu (1/21/14). There was no definitive response aside from an email from Ms. DeWitt in which she stated "you have been given formal notice in two separate filings of the FISA material we do intend to use." Email from AUSA DeWitt to DFPD Aaron (1/22/14). Defense counsel reviewed the two filings, both the under seal notice of FISA evidence and the filing related to the government's reliance on CIPA evidence (both discussed infra), and did not find notice of the specific documents that constituted FISA evidence. Defense counsel again wrote to the government, requested clarification, and this time added "FISA? YES ___ NO ___" to each of the items in the email dated 1/21/14 so the government could simply check yes or no and fax or PDF and email its response. Email from DFPD Aaron to AUSA Dewitt (2/19/14). No response has been provided to date. Therefore, the defense cannot be more specific in its description of the FISA evidence other than what appears *infra* in the quotation from the 1/21/14 email.

## LEGAL ARGUMENT

**A.  The FISA Evidence Should be Suppressed.**

Defendant, Sohiel Omar Kabir, moves to suppress any evidence obtained through the Foreign Intelligence Surveillance Act (FISA) (50 U.S.C. §§ 1801-1811, 1821-1829), and to discover the applications supporting the issuance of the FISA warrants. 50 U.S.C. §§ 1806(e) and 1825(f) (FISA information may be suppressed if unlawfully acquired, or the surveillance was "not made in conformity with an order of authorization or approval").

Procedurally, if the government files "an affidavit under oath that disclosure . . . would harm the national security of the United States," the Court can "review in camera and ex parte the application, order, and such other materials relating to the physical search." 50 U.S.C. §§ 1806(e), 1825(f). When considering the motion and

2

1 only when "disclosure is necessary to make an accurate determination of the legality of
2 the physical search," the Court may disclose FISA information "to the aggrieved
3 person, under appropriate security procedures and protective orders" or "may require
4 the Attorney General to provide to the aggrieved person a summary of such materials."
5 50 U.S.C. §§ 1806(f) and 1825(g).

6      All evidence obtained and derived from FISA surveillance or searches should be
7 suppressed because the FISA applications may fail to establish probable cause that Mr.
8 Kabir is an "agent of a foreign power," or the applications may contain intentional or
9 reckless material falsehoods or omissions, or minimizations procedures may be
10 inadequate, or the government may have failed to comply with minimization
11 procedures, or the government may not have made the required certifications in FISA
12 applications, or those certifications may have been erroneous, or any extensions of
13 FISA applications based on searches performed may be fruit of the poisonous tree and
14 should be suppressed. All of these grounds for suppression may be present in this
15 case.

16      Before the FISA court can approve electronic surveillance or a physical search,
17 the government must show that "the target of the electronic surveillance is a foreign
18 power or an agent of a foreign power" and that each of the facilities or places at which
19 the electronic surveillance or physical search is directed is being used, or is about to be
20 used, by the foreign power or an agent thereof. 50 U.S.C. §§ 1804(a)(3); 1824(a)(2).
21 FISA also requires a "certification or certifications by the Assistant to the President for
22 National Security Affairs," or other officials designated by the President "that a
23 significant purpose of the surveillance or search is to obtain foreign intelligence
24 information." 50 U.S.C. §§ 1804(a)(6)(B), 1823(a)(6)(B).

25      FISA applications and orders are reviewed de novo. *United States v.*
26 *Hammound*, 381 F.3d 316, 332 (4th Cir. 2004) (noting district court's de novo review
27 and conducting its own de novo review of FISA materials), vacated on other grounds,
28 543 U.S. 1097 (2005). Therefore, "no deference [should be] accorded to the FISC's

probable cause determinations." *United States v. Rosen*, 447 F.Supp. 2d 538, 545 (E.D. Va. 2006).

## B. ACCESS TO FISA DISCOVERY IS REQUIRED TO LITIGATE SUPPRESSION ISSUES AND IS REQUIRED IN ORDER TO CONFORM WITH DUE PROCESS OF LAW.

One district court has granted the defense request for discovery of the FISA application materials. District Judge Sharon Coleman wrote that:

> While this Court is mindful of the fact that no court has ever allowed disclosure of FISA materials to the defense, in this case, the Court finds that the disclosure may be necessary. This finding is not made lightly, and follows a thorough and careful review of the FISA application and related materials. **The Court finds however that an accurate determination of the legality of the surveillance is best made in this case as part of an adversarial proceeding.** The adversarial process is the bedrock of effective assistance of counsel protected by the Sixth Amendment. *Anders v. California*, 386 U.S. 738, 743 (1967). Indeed, though this Court is capable of making such a determination, the adversarial process is integral to safeguarding the rights of all citizens, including those charged with a crime. "The right to the effective assistance of counsel is thus the right of the accused to require the prosecution's case to survive the crucible of meaningful adversarial testing." *United States v. Cronic*, 466 U.S. 648, 656 (1984).

*United States v. Daoud*, No. 12-cr-723, 2014 WL 321384 (N.D.Ill. Jan. 29, 2014) (emphasis added). The same reasoning applies here.

The district court has the discretion to disclose portions of relevant materials, under appropriate protective procedures, if it decides that such disclosure is necessary to make an accurate determination of the legality of the surveillance, or is otherwise required by due process. 50 U.S.C. §§ 1806(f) (electronic surveillance), 1825(g) (physical searches); *United States v. Stewart*, 590 F.3d 93, 128 (2d Cir. 2009). Both concerns require that Mr. Kabir have access to the FISA materials in this case.

While courts have not allowed defense participation in suppression hearings, the decisions articulate several principles that support defense participation here. For example, both *United States v. Belfield*, 692 F.2d 141, 147 (D.C. Cir. 1982), and *United*

4

*States v. Ott*, 827 F.2d 473, 476 (9th Cir. 1987), identified issues such as factual representations, vague identification, or records showing overbroad surveillance, may require disclosure to the defense. Here there are many potential bases for suppression based on unlawful surveillance. There are, furthermore, several complicated issues that make the defense's input necessary. Accordingly, pursuant to 50 U.S.C. § 1806(f), the defendant asks this Court to order the government to provide all applications, extensions, orders, and related materials underlying the electronic surveillance of the defendant conducted pursuant to FISA, as well as applications for such surveillance of any third-party target which intercepted defendant.

Defense input is necessary for an accurate determination of the suppression issues raised above – that Mr. Kabir is not a foreign power or agent of a foreign power and that a "significant purpose" of the FISA application was not foreign intelligence gathering. With respect to both physical searches and electronic surveillance, FISA requires that a court find probable cause to believe that the target of the investigation is a foreign power or agent of a foreign power, and that the facility or place at which the surveillance or search is directed is being used or is about to be used by the target. 50 U.S.C. §§ 1805(a)(2)(A)-(B), 1824(a)(2)(A)-(B). The defense believes that the FISA application does not provide probable cause that Mr. Kabir is a foreign power or agent of a foreign power.

Section 1801(a)-(b) provides several definitions and categories of "foreign power" and "agent of a foreign power." None apply to Mr. Kabir. Indeed, the only category that arguably applies to Mr. Kabir is the "agent of a foreign power" definition in § 1801(b)(1)(C). That section defines an agent of a foreign power as a person who "engages in international terrorism or activities in preparation therefore." "International terrorism" means activities that:

> (1) involve violent acts or acts dangerous to human life that are a violation of the criminal laws of the United States or of any State, or that would be a criminal violation if committed within the jurisdiction of the United States or any State;

    (2)    appear to be intended-
         (A)    to intimidate or coerce a civilian population;
         (B)    to influence the policy of a government by intimidation or coercion; or
         (C)    to affect the conduct of a government by assassination or kidnapping; and
    (3)    occur totally outside the United States, or transcend national boundaries in terms of the means by which they are accomplished, the persons they appear intended to coerce or intimidate, or the locale in which their perpetrators operate or seek asylum.

50 U.S.C. § 1801(c).

When enacted in 1978, FISA applied to interceptions for which the "primary purpose" was foreign intelligence. Following amendment in 2001 by the USA PATRIOT Act, the statute applied to interceptions that have international intelligence gathering as a "significant purpose." *See United States v. Ning Wen*, 477 F.3d 896, 897 (7th Cir. 2007); 50 U.S.C. § 1804(a)(6)(B). The Foreign Intelligence Surveillance Court of Review ("FISCR") concluded that the amended statute allows domestic use of intercepted evidence provided that a "significant" international objective is present at the time of the FISA order. *Ning Wen*, 477 F.3d at 897 (citing *In re Sealed Case*, 310 F.3d 717 (F.I.S.Ct.Rev.2002)). The FISCR has further stated that the "significant purpose" test, "impose[s] a requirement that the government have a measurable foreign intelligence purpose, other than just criminal prosecution of even foreign intelligence crimes" in seeking to obtain a FISA order. *Sealed Case*, 310 F.3d at 735. When evaluating probable cause in a search warrant, courts are instructed to rely on common sense. *Illinois v. Gates*, 462 U.S. 213, 239 (1983). Common sense show us that this was a criminal investigation from the beginning. Looking at the entirety of this investigation, it is obvious that its sole purpose was to build a criminal case, and had no relevance to foreign intelligence gathering. That is demonstrated by the use of a confidential informant from the inception of the case. Thus, FISA was improperly used and the fruits of the FISA searches and surveillance should be suppressed. These are complex issues that involve statutory interpretation and legal principles to which the

defense can, and should, be able to contribute. *United States v. Thompson*, 827 F.2d 1254, 1259 (9th Cir. 1987) ("[a]dversary proceedings do in fact take more time, and they are more cumbersome, but with good reason: The adversary process helps us get at the truth").

Defense involvement is also needed to address why the information could not be obtained by normal investigative procedures. FISA may only be used when the Attorney General certifies, "that such information cannot reasonably be obtained by normal investigative procedures." 50 U.S.C. §§ 1804(a)(6)(C); 1823(a)(6)(C). This is an important check on the executive's power. A defense perspective is necessary to determine why normal investigative procedures could not be used in this case and to refute the government's explanation for why it relied on FISA.

Defense involvement is necessary to address questions related to minimization of government intrusion in this case. Under FISA, as under the Title III wiretap statute, the government must demonstrate it has minimized its intrusions. *See* 50 U.S.C. §§ 1801(h); 1802 (a)(1)(C);1804(a)(4); 1805(a)(3); 1806(a); 1821(4); 1822(a)(1)(A)(iii); 1823(a)(4); 1824(a)(3), and (c)(2)(A); 1825(a); 1861(g); 1881a(e) and (g)(2)(A)(ii) and (i)(2)(C); 1881b(b)(D) and (c)(1)(C) and (c)(3)(C) and (d)(2); 1881c(b)(4) and (c)(1)(C) and (c)(3)(C) and (d)(2). The purpose of the minimization procedures is "to protect, as far as reasonable" the individual against "the acquisition, retention, and dissemination of nonpublic information which is not foreign intelligence information." *In re Sealed Case*, 310 F.3d at 731 (citing § 1801(h)(2)). If it is not foreign intelligence information as defined by the statute, the procedures ensure that "the government does not use the information to identify the target or third party, unless such identification is necessary to properly understand or assess the foreign intelligence information that is collected." *Id.*

Three specific types of minimization are required to protect distinct interests. 50 U.S.C. § 1801. First, by minimizing acquisition, Congress thought that surveillance should be discontinued where the target is not a party to the communications. Second,

7

1  by minimizing retention, Congress intended that information which is not necessary for
2  obtaining, producing, or disseminating foreign intelligence information, be destroyed
3  where feasible. Third, by minimizing dissemination, Congress intended that even
4  lawfully retained information should only be divulged to those officials with a specific
5  need. *Id.*

6  In this case, based on the limited information known to the defense, it appears
7  that the surveillance was extremely broad, encompassing computers and other forms of
8  electronic data storage and communication, and intercepting audio and visual material,
9  and there was little to no effort made to minimize the amount of intrusion to
10 information related foreign intelligence gathering. This is a case in which defense input
11 is essential because there was surveillance of such a "significant amount of nonforeign
12 intelligence information" that it is apparent that the minimization procedures were not
13 followed. *United States v. Belfield*, 692 F.2d 141 (D.C. Cir. 1982).

14 FISA requires disclosure "to the extent that due process requires discovery or
15 disclosure." 18 U.S.C. §§ 1806(g), 1825(h), 1845(g)(2). When balancing the interests
16 between the disclosure of state secrets and the defendant's right to a fair trial, the latter
17 must prevail. "[I]t is unconscionable to allow [the Government] to undertake
18 prosecution and then invoke its governmental privileges to deprive the accused of
19 anything which might be material to his defense." *United States v. Reynolds*, 345 U.S.
20 1, 12 (1953). In that event, "the Government can invoke its evidentiary privileges only
21 at the price of letting the defendant go free." *Id.*; *see also United States v. Aref*, 533
22 F.3d 72, 80 (2d Cir. 2008) (a criminal defendant must have access to information that is
23 "helpful or material" to the defense, regardless of whether such information is a state
24 secret). *Aref* is broader than the usual disclosure obligations of prosecutors since
25 "helpful or material" is a lower standard than *Brady v. Maryland*, 373 U.S. 83 (1963),
26 as "information can be helpful without being favorable in the Brady sense." *Aref*, 533
27 F.3d at 80. Thus, the government must disclose any and all helpful information to the
28

8

1 defense, regardless of whether it is classified. *Id.*; *see also United States v. Varca*, 896
2 F.2d 900, 905 (5th Cir. 1990).

3 Under CIPA, when a case involves classified information that is material to the
4 defense, the government may: (1) disclose the material to counsel; (2) declassify the
5 material and disclose it; (3) in some circumstances, provide an unclassified summary of
6 the material; or (4) if it refuses any of the three disclosure options, it faces exclusion of
7 the evidence or dismissal of its case. 18 U.S.C. App. III at § 6(c) and (e). Here, where
8 state secrets may be elicited from the government, the proper procedure is to follow
9 CIPA rather than to preclude discovery and examination of materials by the defense.
10 *See, e.g., United States v. Poindexter*, 732 F.Supp. 142, 154-55 (D.D.C. 1990).

11 The importance of a defense perspective in assessing the materials in this case
12 that are helpful to Mr. Kabir's defense cannot be overstated. The defense will provide a
13 unique position to evaluate the plethora of electronic surveillance present in this case
14 and assess its helpfulness to Mr. Kabir. *Alderman v. United States*, 394 U.S. 165, 182-
15 84 (1969). In *Alderman*, the Supreme Court said "adversary inquiry" is necessary
16 when the "complexity of the issues presented for adjudication" is combined with the
17 "inadequacy of ex parte procedures as a means for their accurate resolution," thereby
18 making "the displacement of well-informed advocacy necessarily . . . less justifiable."
19 *Id.* at 183-84. The district court's ability to represent the interests of a defendant is
20 limited by the fact that

> [a]n apparently innocent phrase, a chance remark, a reference to what appears to be a neutral person or event, the identity of a caller or the individual on the other end of a telephone, or even the manner of speaking or using words may have special significance to one who knows the more intimate facts of an accused's life.

25 *Id.* at 182. Here, the 37,000+ pages of discovery, the multiple data storage devices, and
26 the many hours of recorded audio--just like "the volume of the material to be examined
27 and the complexity and difficulty of the judgments involved" in *Alderman*--requires a
28

9

defense perspective and the protections provided by the adversarial process. *Id.* at 182 n.14.

Even if the Court were to refuse to permit the defense its due process right to access the FISA information to determine its helpfulness, the Court must still "err on the side of protecting the interests of the Defendant," when determining what should be disclosed since the ex parte nature of FISA proceedings are inadequate to protect defendants. *United States v. Hanjuan Jin*, 791 F.Supp.2d 612, 620 (N.D.Ill. 2011).

## CONCLUSION

Based on the arguments and authorities cited above, the defense respectfully requests that the FISA evidence be suppressed, and/or that the Court order disclosure of information related to the obtaining of FISA evidence, including all applications, extensions, orders, and related materials underlying the electronic surveillance of the defendant conducted pursuant to FISA, as well as applications for such surveillance of any third-party target which intercepted defendant.

Respectfully submitted,

SEAN K. KENNEDY
Federal Public Defender

DATED: February 24, 2014  By */s/ Jeffrey A. Aaron*
JEFFREY A. AARON
Deputy Federal Public Defender

10