ANDRÉ BIROTTE JR.
United States Attorney
ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division
SUSAN J. DE WITT (Cal. Bar No. 132462)
CHRISTOPHER D. GRIGG (Cal. Bar No. 220243)
Deputy Chief, National Security Section
ALLEN W. CHIU (Cal. Bar No. 240516)
Assistant United States Attorneys
National Security Section
     1300 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-4496/5429
     Facsimile: (213) 894-6436
     E-mail: susan.dewitt@usdoj.gov
             christopher.grigg@usdoj.gov
             allen.chiu@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ED No. CR 12-00092(B)-VAP |
| Plaintiff, | GOVERNMENT'S OPPOSITION TO DEFENDANT SOHIEL OMAR KABIR'S MOTION TO DISCLOSE INFORMANTS |
| v. | Hearing Date: July 29, 2014 |
| SOHIEL OMAR KABIR, et al., | Hearing Time: 9:00 a.m. Place: Courtroom of the Honorable Virginia A. Phillips |
| Defendants. | |

     The United States of America, by and through its undersigned counsel of record, hereby files its Opposition to Defendant Sohiel Omar Kabir's Motion To Disclose Informants ("Opposition").

     This Opposition rests on the attached memorandum of points and

///

///

1

authorities, the files and records in this case, and any further evidence or argument the Court may allow.

Dated: July 9, 2014                    Respectfully submitted,

                                       ANDRÉ BIROTTE JR.
                                       United States Attorney

                                       ROBERT E. DUGDALE
                                       Assistant United States Attorney
                                       Chief, Criminal Division


                                          ___/s/_____
                                       SUSAN J. De WITT
                                       CHRISTOPHER D. GRIGG
                                       ALLEN W. CHIU

                                       National Security Section
                                       Assistant United States Attorneys

                                       Attorneys for Plaintiff
                                       UNITED STATES OF AMERICA

2

**TABLE OF CONTENTS**

DESCRIPTION                                                          PAGE

TABLE OF AUTHORITIES...............................................ii

MEMORANDUM OF POINTS AND AUTHORITIES...............................1

I.    INTRODUCTION.................................................1

II.   ARGUMENT....................................................3

      A.   Kabir Is Not Entitled To Discovery About Persons Who
           Merely Spotted His Co-conspirators On A Few Random
           Days Or Observed His Facebook Page Two Years Ago..........3

           1.   Kabir fails to meet his burden to show that the
                source and the Dallas CHS themselves have
                relevant and helpful information about the case......5

           2.   Cases cited by Kabir holding disclosure may have
                been warranted are inapposite.......................9

           3.   Kabir's arguments about the possibility of other
                witnesses amount to mere speculation...............10

           4.   Kabir's danger argument is misplaced...............11

      B.   Kabir Is Not Entitled To Discovery Of Information
           Impeaching Potential Defense Witnesses..................11

III.  CONCLUSION..................................................12

**TABLE OF AUTHORITIES**

DESCRIPTION                                                                PAGE

**FEDERAL CASES**

Brady v. Maryland,
     373 U.S. 83 (1963)..........................................11

Giglio v. United States,
     405 U.S. 150 (1972).........................................11

Roviaro v. United States,
     353 U.S. 53 (1957).........................................3, 4

United States v. Amador-Galvan,
     9 F.3d 1414 (9th Cir. 1993)................................4, 9

United States v. Henderson,
     241 F.3d 638 (9th Cir. 2001)............................passim

United States v. Hernandez,
     608 F.2d 741 (9th Cir. 1979)...............................10

United States v. Ordonez,
     737 F.2d 793 (9th Cir. 1993)................................9

United States v. Sai Keung Wong,
     886 F.2d 252 (9th Cir. 1989)...........................passim

United States v. Souffront,
     338 F.3d 809 (7th Cir. 2003)...............................12

United States v. Spires,
     3 F.3d 1234 (9th Cir. 1993)................................4, 8

United States v. Williams,
     898 F.2d 1400 (9th Cir. 1990)..........................4, 6, 7

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.    INTRODUCTION**

In discovery, the government has produced numerous reports, hundreds of hours of recordings, images, and other material documenting the interaction between the Federal Bureau of Investigation ("FBI") confidential human source ("the CHS") involved in this case and the defendants.  Because the government may call the CHS to testify at trial, the government has also produced additional material relating to the CHS, including potential impeachment information, as the Court has directed.

The government has also produced reports documenting that, on a handful of days in 2012, another FBI source not otherwise involved in the case (hereinafter "the source") spotted, but did not interact or speak with, Ralph Kenneth Deleon ("Deleon") at a mosque in Pomona, California, and, on three other days days, saw Miguel Santana ("Santana") but, again, never interacted or spoke with him.  The source's sightings have no bearing on this case and the source's testimony will not be offered in the government's case at trial.

The government has also produced a report by an agent from the FBI's office in Dallas, Texas, stating that in May 2012 he and a CHS (referred to herein as the "Dallas agent" and the "Dallas CHS") observed postings on the Facebook page of defendant Sohiel Omar Kabir ("Kabir").  These include: an exchange between Kabir and Santana; a video that Kabir uploaded supporting worldwide jihad displaying an Al-Qa'ida black and white banner; "likes" and "shares" of jihadi and martyrdom propaganda; videos produced by Al-Qa'ida's media wing, Al-Sahab; and video footage of improvised explosives devices striking military vehicles in Afghanistan.  As documented in a second report

1

by the Dallas agent, the Dallas CHS had previously observed Santana's Tumblr webpage (Tumblr is an on-line microblogging site) and sent Santana a "friend" request via Facebook, to which Santana responded. As the reports show, the Dallas CHS did not communicate with Kabir, Deleon, or Arifeen Gojali.[1]

Separately, as the Court is aware, the government long ago produced voluminous discovery relating to the defendants' social media, including copies and hundreds of images of Kabir's, Deleon's, Santana's, and Gojali's Facebook pages and accounts, as well as images and copies of Santana's Tumblr page.  The government has also produced the defendants' Facebook messages to each other and others, as well as related e-mail notifications from Facebook to the defendants informing them that they had received messages.  That the Dallas agent and the Dallas CHS observed Kabir's Facebook page two years ago is irrelevant and neither will testify in the government's case.

Nonetheless, on June 30, 2014, Kabir filed a motion seeking disclosure of the identities of the source and the Dallas CHS.  Kabir argues that they were "percipient" and therefore that he is entitled to their identities.  (Mot. at 4.)  Even though neither the source nor the Dallas CHS were otherwise involved in this case and will not testify for the government, Kabir also argues that he is entitled to impeachment information about them.  (Mot. at 6.)  Kabir's arguments are contrary to well-settled law and his motion should be denied.

---

[1] Kabir chose to attach copies of the above-described reports as Exhibits A and B to his motion despite paragraph 12 of the Court's Order dated August 2, 2013, CR 158.  As a practical matter, as to Kabir's exhibits, the harm is already done.  Therefore, in the interest of efficiency, the government elects to proceed accordingly. Kabir's choice, however, raises serious concerns.

**II.   ARGUMENT**

>   **A.   Kabir Is Not Entitled To Discovery About Persons Who Merely Spotted His Co-conspirators On A Few Random Days Or Observed His Facebook Page Two Years Ago**

Kabir relies on Roviaro v. United States, 353 U.S. 53 (1957), to argue that he is entitled to the identities of the source and the Dallas CHS.  (Mot. at 3-5.)  His reliance is misplaced.

In Roviaro, the defendant was charged with facilitating and concealing the importation of heroin and with selling the heroin to an informer.  353 U.S. at 55.  At trial, the government presented the testimony of law enforcement officers who listened to the conversation between the defendant and the informer and who saw the defendant deliver the heroin parcel from afar.  Id. at 56-58.  The identity of the informer, who did not testify, was not disclosed.  Id. at 55-56.

The Supreme Court recognized that the government has a privilege to withhold informers' identities, the important purpose of which "is the furtherance and protection of the public interest in effective law enforcement" by preserving anonymity and thereby encouraging citizens to report crimes.  Id. at 59; United States v. Henderson, 241 F.3d 638, 645 (9th Cir. 2001) ("This privilege serves several important law enforcement objectives.").  The Court held, however, that where the identity of the informer is "relevant and helpful to the defense," the privilege must give way, id. at 60-61, and that "materiality of [the informer's] possible testimony must be determined by reference to the offense charged," id. at 62.

Under Roviaro and well-settled Ninth Circuit law, the test for materiality is fact specific.  See United States v. Sai Keung Wong, 886 F.2d 252, 255-56 (9th Cir. 1989) (the relationship between the

3

likely testimony of the informant "will often depend on the degree of involvement by the informant in the charged crime" (citations omitted)).  For example, the Supreme Court found in Roviaro that the informer's identity should have been disclosed because he helped set up, and took a prominent part in, the charged heroin deal and was the only witness who could have: contradicted the officer's testimony about the defendant's statements; contradicted evidence of the contents of the heroin parcel; established the defendant's lack of knowledge of the parcel's contents; or contradicted his identity as the perpetrator, especially because trial testimony showed that the informer never before met the defendant.  Id. at 63-65.

"To obtain disclosure, a defendant must show a need for the information . . . and in doing so, must show more than a 'mere suspicion' that the informant has information which will prove 'relevant and helpful' to his defense, or that will be essential to a fair trial."  Henderson, 241 F.3d at 645 (citing United States v. Spires, 3 F.3d 1234, 1238 (9th Cir. 1993); Sai Keung Wong, 886 F.2d at 256 (affirming withholding of informant identity because "there [was] no evidence to suggest that the informant was the only percipient witness to any critical event" and "informant's testimony would have either been cumulative or insignificant"); United States v. Amador-Galvan, 9 F.3d 1414, 1417 (9th Cir. 1993) (defendant bears the burden of demonstrating need for disclosure); and United States v. Williams, 898 F.2d 1400, 1402 (9th Cir. 1990) (defendant failed to meet burden for disclosure because informant's information was only used for a search warrant and defendant was not charged with drug transaction involving informant).

Kabir's motion offers speculation that the source, or the Dallas

4

CHS, or other persons may have information that is ultimately duplicative and immaterial given the charges and the facts. Accordingly, Kabir has failed to meet his burden and his motion should be denied.

      1.  <u>Kabir fails to meet his burden to show that the source and the Dallas CHS themselves have relevant and helpful information about the case</u>

Kabir speculates that the source and the Dallas CHS "may say that the defendants did not speak of jihad, or that they did not often talk to the co-defendants." (Mot. at 4.) Kabir argues that the government's case is "that the alleged c0o-conspirators [sic] were obsessed with talking about and training for jihad" and that the identities of persons who merely saw, but otherwise never interacted with or spoke to, Deleon or Santana on a handful of random dates in early 2012 are therefore "crucial" because, with the informant, he could "get before the jury the fact that the alleged co-conspirators often talked to other, often did not talk of jihad, and did often did not prepare or train for violent jihad." (Mot. at 5.)

As an initial matter, the argument is strained because the government has never alleged that a defendant "was obsessed" with any aspect of the case. Rather, the Second Superseding Indictment charges defendants with conspiring to provide material support and to commit other acts. A defendant can conspire without obsessing.

Even so, under well-settled Ninth Circuit precedent, the fact that Deleon or Santana were spotted in a public place on a handful of select days talking with others or "not prepar[ing] or train[ing] for violent jihad" (Mot. at 5) is not meaningful let alone material.

For example, in <u>Henderson</u>, a tipster reported that he recognized the defendant as a bank robbery suspect portrayed on a television

show.  Henderson, 241 F.3d at 643.  Henderson was later convicted of two different bank robberies.  Id. at 644-45.  He claimed at trial that he was framed and argued on appeal that the informant's identity would be relevant to this defense.  Id. at 644-45.  The Ninth Circuit rejected his argument because disclosure of the informant would not have explained away other evidence of Henderson's guilt, including eye witness identifications.  Id. at 646.

In Williams, a warrant to search a residence rested in part on information that an informant purchased drugs at the residence.  Williams, 898 F.2d at 1401.  The defendant was convicted of possession with intent to distribute cocaine found during the search and argued on appeal that the informant should have been disclosed.  Id. at 1401-02.  The court held that defendant failed to meet his burden because the informant was not involved in the charged offense and could not have offered evidence that would have assisted the defense.  Id. at 1402.

The defendants in Sai Keung Wong were convicted of narcotics offenses in a case springing from information that an informant provided to Malaysian authorities, who in turn informed American law enforcement.  Sai Keung Wong, 886 F.2d at 254-55.  The court held that the defendants failed to meet their burden as to multiple defense theories because: "there [was] no evidence to suggest that the informant was the only percipient witness to any critical event;" the informant's testimony "would either have been cumulative or insignificant;" and the government largely avoided reference to the informant's activities at trial.  Id. at 256-57.

Here, neither the source nor the Dallas CHS was involved in the charged offenses or percipient to any critical event.  For that

6

matter, the Dallas CHS was not percipient to any event at all.  It is not clear how the Dallas CHS could possibly testify about Deleon's and Santana's activities at the mosque or elsewhere.

Even if the source could testify about the handful of days he or she spotted Deleon and Santana in public, the source's information did not initiate the investigation or contribute to search warrants. As in Henderson, Williams, Sai Keung Wong, the source was not involved in the crimes charged in this case.

Further, as in Henderson, the source's testimony here would not contradict the considerable evidence demonstrating the defendants' membership in the charged conspiracies, including voluminous digital evidence and screenshots of the co-conspirators' on-line activities and communications, audio and video recordings of their conversations, recordings and documentary evidence of their physical activities such as going to shooting ranges to practice with assault weapons, and evidence of their arrests while en route to Mexico with plane tickets to fly to Istanbul.

The government has not suggested that the co-conspirators did nothing else in their daily lives but train for violent jihad, talk only amongst themselves, or talk only about violent jihad.  (See Mot. at 5.)  In a case involving conduct spanning more than two years, such a suggestion would be both unusual and unnecessary.  Kabir's implication that the government made such a claim is puzzling because the discovery in this case covers much of the co-conspirators' daily behavior and includes their on-line, telephonic, and in-person communications with others and their activities such as entertaining guests and watching movies.

Moreover, contrary to Kabir's argument that the source alone has

knowledge of the persons that Deleon and Santana spoke to at the mosque" (Mot. at 5), the CHS spent many hours with Deleon, Santana, and Gojali and observed them at public places, including the mosque. Much of the CHS's interaction with the defendants was recorded, and those recordings have been produced in discovery.  Thus, given the available evidence, testimony from the source or the Dallas CHS to show that Deleon and Santana talked to others on a few select days in 2012 would be both cumulative and insignificant.  See Sai Keung Wong, 886 F.2d at 256.

In several of the above-cited cases, the district court held in camera hearings to consider whether an informer's identity should be disclosed.  For example, in Spires, the defendant made a sufficient showing to warrant in camera hearing because the suspected informer was defendant's roommate and could have planted drugs and weapons in defendant's truck.  Spires, 3 F.3d at 1238.  The present case, however, is not a matter of mistaken identity or framing and Kabir does not argue that either the source or the Dallas CHS could have played any role in the charged offenses.  See Henderson, 241 F.3d at 645-46 (unlike in Spires, disclosure could not explain other evidence).  Accordingly, an in camera hearing is not warranted here. Furthermore, Kabir does not argue that the Court should hold one. Given the insignificance of and duplicative nature of the source's and the Dallas CHS's information, Kabir's arguments do not warrant a hearing, let alone disclosure.  Moreover, presenting witness testimony to show that the source spotted Deleon or Santana on select days would needlessly waste time.  Accordingly, Kabir's motion should be denied.

///

8

> 2. <u>Cases cited by Kabir holding disclosure may have been warranted are inapposite</u>

Two cases cited by Kabir holding disclosure may have been warranted involve the possibility that informants could help establish the defense of mistaken identity and thus do not apply here.  In <u>Amador-Galvan</u> (<u>see</u> Mot. at 4), a person attempted to drive a car containing cocaine into the United States from Mexico and ran back to Mexico after customs officials stopped the car.  <u>Amador-Galvan</u>, 9 F.3d 1415-16.  The defendant was identified and later arrested on tips from informants that he could have been the driver.  <u>Id.</u>  The court remanded so that district court could hold a hearing to determine whether the informants could help establish that the defendant was not the driver.  <u>Id.</u> at 1417.

Similarly, in <u>United States v. Ordonez</u> (<u>see</u> Mot. at 5), a search warrant affidavit rested on an informant's information about a major cocaine trafficker.  737 F.2d 793, 807 (9th Cir. 1993).  One defendant argued that the informant knew the hierarchy of the drug trafficking organization and could have established his defense of mistaken identity, while another defendant argued the informant could have established that he was not a supervisor, organizer, or leader as the government had charged.  <u>Id.</u> at 808.

The case here, by contrast, does not involve a defense of mistaken identity.  Indeed, unlike in <u>Amador-Galvan</u>, the defendants were actually arrested while in a car driving to Mexico.  Moreover, neither the source nor the Dallas CHS knew the defendants or the group of co-conspirators or its hierarchy.  On these facts, <u>Amador-Galvan</u> and <u>Ordonez</u> are thus inapposite.

Also unavailing is <u>United States v. Hernandez</u>, 608 F.2d 741 (9th

9

Cir. 1979), which Kabir cites to argue that he is entitled to the addresses of the source and the Dallas CHS.  (Mot. at 5-6.)  In Hernandez, the informant himself arranged the defendants' sale of narcotics to undercover agents and was the principal witness establishing the drug conspiracy for which the defendants were convicted.  Hernandez, 608 F.2d at 744.  His identity was disclosed and he testified at trial, although his address was only revealed during cross-examination.  Id. at 744-45.  The court expressly held that the defense was not entitled to the informant's address before cross-examination.  Id. at 745.  Kabir is not entitled to such information here.

> 3.    Kabir's arguments about the possibility of other witnesses amount to mere speculation

Kabir argues that disclosure of the identity of the source and the Dallas CHS is warranted because Kabir could identify other persons who, in turn, "may say that the defendants did not speak of jihad" or did not often talk to each other.  (Mot. at 4.)  Again, it is unclear how the Dallas CHS could identify any such person. Furthermore, to the extent that Kabir argues the Dallas CHS, who viewed Kabir's Facebook and Santana's Tumblr pages two years ago, could identify other persons who communicated with them on-line, as noted, the defendants' social media has already been produced in multiple formats in discovery.

Kabir's argument rests on two layers of speculation.  First, Kabir speculates that the source and the Dallas CHS could actually identify anyone who spoke with the co-conspirators before their arrests.  Second, even if such a person could be identified, Kabir speculates that the person "may" recall Deleon's and Santana's

conversations in 2012 and earlier.  Such compound speculation amounts to less than mere suspicion and fails to meet the standard for an in camera hearing or disclosure.  See Henderson, 241 F.3d at 645 (more than mere suspicion is required).

4.    Kabir's danger argument is misplaced

Kabir argues that nothing in his history suggests that he is a danger to any informant.  (Mot. at 4-5.)  Kabir, of course, is not the only potential source of danger to the source or the Dallas CHS. Nonetheless, because Kabir raises the issue, the government notes that discovery in this case shows that Kabir's criminal history includes arrests for attempted escape from custody and assault with force likely to cause great bodily injury.  See USA002048-49.  The discovery also shows that, while in Germany in 2012, Kabir may have incited the beating of a man in California, discussed the incident with Santana and Deleon, suggested that another person kill the man, and stated that he, Kabir, wanted to return (presumably to the United States) to put the man in the hospital.  See, e.g., USA0018125, USA0020112-17, USA0024751, USA0025898, and USA0030115-16.

**B.    Kabir Is Not Entitled To Discovery Of Information Impeaching Potential Defense Witnesses**

Kabir argues that the government must provide evidence relating to the reliability of the source and the Dallas CHS.  (Mot. at 6.) None of the cases Kabir cites, including Brady v. Maryland, 373 U.S. 83 (1963), and Giglio v. United States, 405 U.S. 150 (1972), stand for the proposition that a defendant is entitled to discovery of evidence impeaching his own witnesses.  Evidence impeaching Kabir's potential witnesses is not favorable to the defense and his argument lacks merit.  See United States v. Souffront, 338 F.3d 809, 824 (7th

11

Cir. 2003) (evidence impeaching defense witness is not favorable to the defense).

**III. CONCLUSION**

For the foregoing reasons, Kabir's motion for disclosure of the identity of the source and the Dallas CHS should be denied.

Dated: July 9, 2014                    Respectfully submitted,

                                       ANDRÉ BIROTTE JR.
                                       United States Attorney

                                       ROBERT E. DUGDALE
                                       Assistant United States Attorney
                                       Chief, Criminal Division


                                       _____/s/_____
                                       SUSAN J. De WITT
                                       CHRISTOPHER D. GRIGG
                                       ALLEN W. CHIU
                                       National Security Section
                                       Assistant United States Attorney

                                       Attorneys for Plaintiff
                                       UNITED STATES OF AMERICA

12